PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NICKIE THOMAS GRAY, JR., | ) |
| | ) CASE NO. 4:16CV0564 |
| Petitioner, | ) (4:14CR0164) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| UNITED STATES OF AMERICA, | ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Respondent. | ) [Resolving ECF Nos. 67 and 73] |

Before the Court is Petitioner Nickie Thomas Gray, Jr.'s Motion and Supplemental Motion to Vacate and Set Aside Judgment (ECF Nos. 67 and 73)[1] pursuant to 28 U.S.C. § 2255.[2] The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons stated below, the motions are denied.

## I. Background

On May 6, 2014, a federal grand jury, in the Northern District of Ohio, returned a two-count indictment charging Gray with knowingly receiving and distributing computer files that contained visual depictions of real minors engaged in sexually explicit conduct from February 14, 2013 through April 1, 2014 in violation of 18 U.S.C. § 2252(a)(2) (Count 1); and

---

[1] The docket references will be to the criminal case, not the related civil case, 4:16CV0564.

[2] On December 8, 2017, Petitioner filed a Petition for Writ of Mandamus to compel a ruling on his post-judgment motions. The Petition for Writ of Mandamus remains pending in the United States Court of Appeals for the Sixth Circuit under Case No. 17-4270.

(4:16CV0564)

knowingly possessing two Gateway computers and two Western Digital hard drives that contained child pornography that included an image of a prepubescent minor on April 17, 2014, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). Indictment (ECF No. 12).

Petitioner filed a Motion to Suppress/*in Limine* (ECF No. 25) requesting the Court suppress the use of any and all statements made by him during a custodial interview with law enforcement, which included a video that is approximately two hours long. The motion was withdrawn at the hearing held on October 7, 2014. Minutes of Proceedings.

In February 2016, the Court of Appeals for the Sixth Circuit affirmed the convictions and sentencing. *United States v. Gray*, 641 Fed.Appx. 462 (6th Cir. 2016) (ECF No. 66). The Sixth Circuit described the factual background of Petitioner's trial, conviction, and sentencing as follows:

> In 2013, a special agent from the Crimes Against Children Unit of the Ohio Bureau of Criminal Investigation used a peer-to-peer file-sharing program[3] to identify internet protocol (IP) addresses of other computers on the program's network that were distributing files containing known images and videos of child pornography. On February 14, 2013, the agent identified an IP address that had such files available for download via the file sharing network. He successfully downloaded three files from that IP address and confirmed that they contained child pornography. The agent then subpoenaed Time Warner Cable for the customer information for the IP address in question and learned that it was registered to Helen Gray in Youngstown, Ohio. Helen Gray is the defendant's mother. She and the defendant were the only occupants of the house. Between February 14, 2013 and April 1, 2014, investigators from the Ohio Bureau of Criminal Investigation, the FBI, and the Mahoning County Sheriff's Office were able to download files containing child pornography from this same IP address using the peer-to-peer program. Investigators continued to confirm that the

---

[3] A peer-to-peer program is a software program designed to allow computers to share files across a network. (Citations to the record omitted.)

2

(4:16CV0564)

> customer linked to that IP address was Helen Gray and that Nickie Gray also resided with her.
>
> On April 17, 2014, investigators executed a search warrant at the Gray residence and found a computer on a desk in the dining room. The computer was password protected. Helen Gray did not know the password. A computer forensic specialist from the Bureau of Criminal Investigation examined the computer, discovered that it contained child pornography, and seized it as evidence. The IP address of that computer was the same as the IP address that had permitted investigators to download child pornography on the peer-to-peer program.
>
> Further examination of the computer revealed that it contained peer-to-peer software and numerous images and videos of child pornography. A computer forensic specialist found search terms in the computer's peer-to-peer program that were indicative of child pornography. The computer also showed that images and videos of child pornography had been viewed and deleted. The computer had software installed called SlimCleaner, a program that is capable of securely deleting files.
>
> \* \* \*
>
> . . . The case proceeded to trial and a jury found Gray guilty of both counts.[4] The district court sentenced Gray to 240 months' imprisonment for each charge to run concurrently, followed by ten years of supervised release for each charge to run concurrently, and ordered him to pay a $200 special assessment.

*Id.*, 641 Fed.Appx. at 464. According to the Bureau of Prisons website

(http://www.bop.gov/inmateloc/ (last visited December 19, 2017)), Petitioner has a September

18, 2031 release date.

## II. Applicable Law

Under 28 U.S.C. § 2255, a federal inmate is provided with a post-conviction means of

collaterally attacking his conviction and sentence. *In re Gregory*, 181 F.3d 713, 714 (6th Cir.

1999). Motions brought under § 2255 are the sole means by which a federal prisoner can

---

[4] The jury also returned a special verdict finding that at least one of the images in Gray's possession depicted a prepubescent minor, a fact that increased his potential sentence. (Citations to the record omitted.)

3

(4:16CV0564)

collaterally attack a conviction or sentence that he alleges to be in violation of federal law. *See Davis v. United States*, 417 U.S. 333 (1974); *Cohen v. United States*, 593 F.2d 766, 770 (6th Cir. 1979).

Section 2255 sets forth four grounds upon which federal prisoners may ordinarily challenge their conviction or sentence: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting § 2255(a)) (internal quotation marks omitted). "In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). Motions to vacate, set aside or correct a sentence pursuant to § 2255 must be filed in the trial court that sentenced the movant. 28 U.S.C. § 2255(a); *Gregory*, 181 F.3d at 714.

A petitioner seeking to vacate, set aside or correct a sentence under § 2255 has the burden of sustaining his contentions by a preponderance of the evidence. *McQueen v. United States*, 58 Fed.Appx. 73, 76 (6th Cir. 2003). In order to prevail on a § 2255 motion alleging *constitutional* error, the petitioner must establish that an error of constitutional magnitude occurred that had a substantial and injurious effect or influence on the proceedings. *McNeil v. United States*, 72 F. Supp.2d 801, 803 (N.D. Ohio 1999) (Economus, J.) (citing *Watson v. United States*, 165 F.3d

4

(4:16CV0564)

486, 488 (6th Cir. 1999)). In order to prevail on a § 2255 motion alleging *non-constitutional* error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

### III. Discussion

In the instant motions, Petitioner alleges seven grounds and encapsulates them under the umbrella of ineffective assistance of counsel. First, Gray asserts his trial counsel failed to object to multiple showings of child pornography photos and videos by the Government to the jury and that the jury took a CD with images of child rape into the jury room. ECF No. 67 at PageID #: 1651-52. Second, his trial counsel failed to object to the testimony of Royal Canadian Mounted Police Staff Sergeant Beverly Csikos. ECF No. 67 at PageID #: 1652-54. Third, Gray argues his trial counsel failed raise an objection that the police did not have a search warrant to "hack into" the computer the Government claims Petitioner used to commit the offenses. ECF No. 67 at PageID #: 1654-55. Fourth, his trial counsel failed to object to comments made to the jury by the trial judge after Margaret Moore testified. ECF No. 67 at PageID #: 1655-57. Fifth, Gray contends his trial counsel fell below the standard of care when he withdrew the Motion to Suppress/*in Limine* (ECF No. 25). ECF No. 67 at PageID #: 1657-58. Sixth, his trial counsel failed to properly represent him by failing to file an additional motion to suppress the warrantless search of Petitioner's computer by hacking into it over the internet, and requesting suppression of the search warrant for the residence of the Defendant, based upon the internet protocol address.

5

(4:16CV0564)

ECF No. 73. Finally, Petitioner asserts his trial counsel failed to object before or during trial, as well as at sentencing, to the double jeopardy he faced for being tried for both possession of child pornography and receipt and distribution of child pornography at the same time and for the same images. ECF No. 67 at PageID #: 1659-65.

In order to prevail on an ineffective assistance of counsel claim, Petitioner bears the burden of showing that trial counsel's performance "fell below an objective standard of reasonableness" and that counsel's ineffectiveness prejudiced Petitioner's defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Unless he makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 687.

To warrant reversal of a conviction, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Court scrutiny of the performance of defense counsel must be "highly deferential." *Id.* at 689. Furthermore, the court reviewing the effectiveness of counsel must recognize that it is "strongly presumed" counsel's assistance was adequate. *Id.* at 690. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Consequently, while trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1250 (6th Cir. 1984).

(4:16CV0564)

In addition, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [*ultimate*] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (emphasis and brackets in original) (quoting *Strickland*, 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-405 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990)). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

Failure to make a particular objection does not usually constitute ineffectiveness, because objections necessarily fall within trial strategy. As stated by the Sixth Circuit in *Lundgren V. Mitchell*:

> [I]n a trial of any size, numerous potentially objectionable events occur. "[T]he Constitution does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Moreover, experienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. Learned counsel therefore use objections in a tactical manner. In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial to a client that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. *See Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005) ("[C]ounsel's failure to object to any of the numerous improper statements in the prosecution's closing argument is well outside [professional norms].") (emphasis in original).

*Lundgren v. Mitchell*, 440 F.3d 754, 774-75 (6th Cir. 2006) (footnote omitted) (affirming the denial of habeas corpus relief pursuant to 28 U.S.C. § 2254).

7

(4:16CV0564)

### A. Evidentiary Hearing

Because the threshold legal issue before the Court is a legal issue, not typically requiring the presentation of evidence not already in the record, the Court resolves the issue of whether Petitioner's trial counsel's performance was deficient on the briefs, files, and records. *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983) (holding that "there is no reason to conduct an evidentiary hearing [on a § 2255 motion] to resolve a purely legal issue"). *See* Order (ECF No. 83).

In *Amr v. United States*, 280 Fed.Appx. 480 (6th Cir. 2008), the Court of Appeals for the Sixth Circuit held that a prisoner was not entitled to a hearing on an ineffective assistance of counsel claim where the claim was conclusively refuted by the record. *Id.* at 485-86. "[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable [her] summarily to dismiss a § 2255 motion. . . ." *Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977). The Court finds that the within motion may be resolved without an evidentiary hearing because the judge's recollection, files and records in this case conclusively show that Petitioner is entitled to no relief under § 2255. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003).

### B. First Claim

First, Petitioner asserts his trial counsel failed to object to multiple showings of child pornography photos and videos by the Government to the jury and that the jury took a CD with images of child rape into the jury room. The Court finds that the First Claim is without merit.

8

(4:16CV0564)

A child pornography prosecution cannot be sanitized of the evidence of the crime—which here, were the child pornography videos and images that Petitioner received, distributed and possessed of real children being victimized. He was not prejudiced by the legitimate probative force of the evidence presented. Evidence is only to be excluded where it calls for a verdict on an improper basis. *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011); *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999); *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993).

Here, asking a jury to convict because Petitioner was receiving, distributing and possessing child pornography was proper where the Government showed the jury the evidence found on Gray's own computer. The Government played representative samples of the child pornography videos in the case at bar. The evidence was properly shown at trial. Moreover, the jury could view the evidence, if it wanted to. Defense counsel had no valid objection to make regarding this evidence.

**C. Second Claim**

Next, Petitioner argues his trial counsel failed to object to the testimony of Royal Canadian Mounted Police Staff Sergeant Csikos. *See* Transcript (ECF No. 62) at PageID #: 995-1027.

Petitioner declined to stipulate that the visual depictions of children engaged in sexually explicit conduct were (1) actual children, or (2) traveled in interstate or foreign commerce. Sergeant Csikos is a Royal Canadian Mounted Police Officer in British Columbia. She testified that one of the videos shown to the jury includes a real girl, who was abused between the ages of

9

(4:16CV0564)

three and five years old, Sergeant Csikos met her, and assured jurors she is a real live victim. The testimony of Sergeant Csikos was necessary to identify the child as a real minor and that the videos traveled in foreign commerce from Canada. The Government properly presented the evidence. Trial counsel had no valid objection to make regarding this evidence. Although defense counsel did make multiple objections during this testimony.

### D. Third Claim

Third, Petitioner contends his trial counsel failed raise an objection that the police did not have a search warrant to "hack into" the computer the Government claims Petitioner used to commit the offenses.

Petitioner had no expectation of privacy in the child pornography that he made publicly available in the shared folder of the peer-to-peer program. Law enforcement officers did not violate the Fourth Amendment by downloading what Petitioner made publicly available. Trial counsel had no reason to raise an objection because there was no Fourth Amendment issue. After law enforcement received the child pornography from Gray, agents obtained a search warrant that permitted the search of his residence and computers for additional evidence of child pornography. *See Aguilar v. Parris*, No. 3:16-cv-00779, 2016 WL 5373532, at \*11-12 (M.D. Tenn. Sept. 26, 2016) below and cases cited by *Aguilar* with regard to the Sixth Claim.

### E. Fourth Claim

Fourth, Petitioner complains his trial counsel failed to object to comments made to the jury by the trial judge after Margaret Moore testified for him. *See* Transcript (ECF No. 63) at PageID #: 1303-58. Ms. Moore's testimony ended at 10:22 a.m. on October 23, 2014. *See* ECF

10

(4:16CV0564)

No. 63 at PageID #: 1358. A mid-morning break was taken. The jury returned to the courtroom at 11:03 a.m., at which time Helen Gray, Petitioner's mother, testified for him. Next, the Government called a rebuttal witness. At the conclusion of the testimony of James Ciotti, the Court stated:

> Jurors, now we'll start your extended lunch break. And what I'll ask is that you return in two hours. It's 12:35, so it's about five minutes shy of that, about 2:30. You don't have to leave the building and be gone for two hours. Of course, the jury suite is a place where you're welcome to be.
> So you can take time away from the court and return, but what I ask is around 2:30, that you be present and accounted for so that we'll know to expect you then. And trust me, we're going to work feverishly at being prepared to bring you back into this room to once again put you to work as we wrap up this case.
> Remember the usual admonition. Do not talk about this case with anyone, not even among yourselves. Don't allow anyone to speak about it with you. And if anything at all happens to cause you a concern and you believe it's related to this case, do not hesitate to report it to me promptly.
> Enjoy your lunch break.

ECF No. 63 at PageID #: 1435-36.

The jury returned to the courtroom at 3:40 p.m., at which time they heard closing arguments. At the conclusion of closing arguments, the Court stated:

> Jurors, it's close to our regular quitting time, and in about 48 seconds it will be 5 p.m. I won't require that you stay for a specific length of time tonight, but I will ask this of you: After you've greeted Alternates 1 and 2, and Alternates 1 and 2 will have to be outside of the room, on their way home, I'll ask you to do just one thing tonight, and that's to select your foreperson.
> \* \* \*
> Jurors, the case is yours. Because I may not see you again tonight before you leave, I remind you, while you are separated, you may not speak about this case with anyone. You may not allow anyone to speak about it with you. Only when the 12 of you are together in that room may you deliberate about the case.
> If anything at all happens to cause you a concern, if you believe it is an urgent concern, don't hesitate to dial 911, but then your next step is to promptly notify me.

11

(4:16CV0564)

ECF No. 63 at PageID #: 1554-55. Contrary to Petitioner's argument, *see* ECF No. 67 at PageID #: 1655, this statement was not made "soon after" testimony was presented by Ms. Moore. Rather the testimony of Helen Gray and James Ciotti, as well as closing arguments of counsel occurred in the over six and one-half hours between the conclusion of Ms. Moore's testimony and the statement of the trial judge, which was made as part of a proper admonition before the jury recessed for the day.

> According to Petitioner,
>
> If Moore's direct testimony were believed, if it had not been directly undermined by the trial judge, then the jury would likely have believed her testimony and given more credence to the Defendant's arguments that he did not knowingly possess or receive or distribute child pornography and that there were many other reasons why these images could have been found by the police on the mother's computer.

ECF No. 67 at PageID #: 1656-57. Gray has not adequately presented argument regarding this issue on habeas and has shown no basis for habeas relief.

### F. Fifth Claim

Gray next contends his trial counsel fell below the standard of care when he withdrew the Motion to Suppress/*in Limine* (ECF No. 25). The Government elected not to litigate the motion and agreed not to offer into evidence statements made by Petitioner during the custodial interview. *See* Government's Response (ECF No. 71) at PageID #: 1689. Trial counsel properly withdrew the motion to suppress at the hearing held on October 7, 2014 because he had achieved his objective of precluding the Government from introducing into evidence admissions made by Gray.

### G. Sixth Claim

12

(4:16CV0564)

In his Supplemental Motion to Vacate Judgment (ECF No. 73), Petitioner argues his trial counsel failed to properly represent him by failing to file an additional motion to suppress the warrantless search of Petitioner's computer by hacking into it over the internet, and requesting suppression of the search warrant for the residence of the Defendant, based upon the internet protocol address. Petitioner cites *United States v. Torres*, No. 5:16-CR-285-DAE, 2016 WL 4821223 (W.D. Tex. Sept. 9, 2016) and a September 2016 white paper of the Electronic Frontier Foundation entitled "Unreliable Informants: IP Addresses, Digital Tips and Police Raids" (ECF No. 73-1) in support of this argument.

In *Torres*, an F.B.I. agent sought and received a warrant from a Magistrate Judge in the Eastern District of Virginia to employ a network investigative technique ("NIT") whereby those users who accessed the target website—hosted in the Eastern District of Virginia—by logging in with a username and password, would be issued certain instructions, causing the "activating" computer to send certain information to a computer run by the Government. This information included the IP address of the "activating" computer, a unique identifier generated by the NIT to distinguish "activating" users from one another, and the operating system of the "activating" computer. The purpose of the NIT was to obtain information to assist the FBI in identifying the "activating computers" and their users. 2016 WL 4821223, at *2. The NIT placed code on the computer of defendant (a resident of San Antonio, Texas) without his permission, causing it to transmit his IP address and other identifying data to the government. The district court stated "[t]hat Mr. Torres did not have a reasonable expectation of privacy in his IP address is of no import. This was unquestionably a 'search' for Fourth Amendment purposes." 2016 WL

(4:16CV0564)

4821223, at *3. The district court, however, denied the defendant's motion to suppress. 2016 WL 4821223, at *7.

Although Petitioner contends that the investigators from the Ohio Bureau of Criminal Investigation, the FBI, and the Mahoning County Sheriff's Office performed an illegal, warrantless search of his computer prior to obtaining the search warrant for the Gray residence, the record belies this statement. When users are logged into file sharing software, the files on their computer are available for every other file sharing software user to view. Indeed, open sharing of files is precisely the purpose of the file sharing software. Faced with a nearly identical factual scenario, the Ninth Circuit Court of Appeals, in *United States v. Ganoe*, made the following observations and conclusions:

> Although as a general matter an individual has an objectively reasonable expectation of privacy in his personal computer, we fail to see how this expectation can survive Ganoe's decision to install and use file-sharing software, thereby opening his computer to anyone else with the same freely available program. The crux of Ganoe's argument is that he simply did not know that others would be able to access files stored on his own computer. But he knew he had file-sharing software on his computer; indeed, he admitted that he used it—he says to get music. Moreover, he was explicitly warned before completing the installation that the folder into which files are downloaded would be shared with other users in the peer-to-peer network. Ganoe thus opened up his download folder to the world, including Agent Rochford. To argue that Ganoe lacked the technical savvy or good sense to configure LimeWire to prevent access to his pornography files is like saying that he did not know enough to close his drapes. Having failed to demonstrate an expectation of privacy that society is prepared to accept as reasonable, Ganoe cannot invoke the protections of the Fourth Amendment.

*United States v. Ganoe*, 538 F.3d 1117, 1127 (9th Cir. 2008), *cert. denied*, 556 U.S. 1202 (2009) (citations omitted). Like Ganoe, Petitioner in the case at bar, installed file sharing software and thereby opened his computer to every other person using that same software. As a result, Gray

14

(4:16CV0564)

had no expectation of privacy in the files viewed by investigators from the Ohio Bureau of Criminal Investigation, the FBI, and the Mahoning County Sheriff's Office using file sharing software. *See Aguilar*, 2016 WL 5373532, at *11-12 (denying habeas corpus relief pursuant to 28 U.S.C. § 2254) (citing *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009); *United States v. Borowy*, 595 F.3d 1045 (9th Cir. 2010), *cert. denied*, 562 U.S. 1092 (2010); *United States v. Perrine*, 518 F.3d 1196 (10th Cir. 2008)).

### H. Seventh Claim

In his final claim, Petitioner asserts his trial counsel failed to object before or during trial, as well as at sentencing, to the double jeopardy he faced for being tried for both possession of child pornography and receipt and distribution of child pornography at the same time and for the same images. Defendant moves the Court to vacate his conviction for both offenses and schedule a new trial on the receiving charge (Count 1). According to Petitioner, "[s]imply vacating the lesser included offense [of possession (Count 2)][5] and re-sentencing is insufficient to cure the defective trial." ECF No. 67 at PageID #: 1664.

In Petitioner's direct appeal, the Sixth Circuit denied Gray's double-jeopardy claim stating:

> Here . . . we have both an indictment charging, and factual record supporting, two convictions based on distinct criminal conduct occurring at two different times. On plain-error review, the defendant has failed to carry his burden of showing that the criminal conduct supporting the two convictions is the same. Absent such a showing, we cannot hold that the district court so plainly erred as to be deemed

---

[5] Possession of child pornography is a lesser included offense of receipt of child pornography." *United States v. Marshall*, 736 F.3d 492, 501 (6th Cir. 2013), *cert. denied*, 134 S.Ct. 2832 (2014).

15

(4:16CV0564)

> derelict in countenancing the prosecution and conviction of, and sentencing for, two distinct offenses.
>
> * * *
>
> Where the dates of offense are undisputedly different and Gray has failed to show that both convictions are based on the same criminal conduct, he has failed to show, under governing Sixth Circuit law in plain-error review, that the two convictions are duplicative.

Gray, 641 Fed.Appx. at 466-67 (ECF No. 66). The panel, however, declined to take sides on the circuit split over whether a defendant receiving and possessing child pornography on different dates is alone sufficient to establish the requisite separate conduct to support dual convictions because Petitioner's direct appeal did not squarely present that specific question. Id. at 466-67.

"[C]onvictions for both receipt and possession of child pornography will stand if *separate conduct* underlies the two charges." Id. at 465 (emphasis in original) (citing United States v. Dudeck, 657 F.3d 424, 430 (6th Cir. 2011)). The evidence presented at trial showed that Petitioner used a peer-to-peer software program to search for and save images and videos of child pornography. On dates from February 14, 2013 through April 1, 2014, investigators were able to access Petitioner's shared files in the peer-to-peer program's network, download some of his available files, and confirm that they contained child pornography. This evidence served as the basis for Petitioner's receiving charge and conviction. On April 17, 2014, investigators executed a search warrant at Petitioner's home and seized his computer. Petitioner had approximately 350 images and 20 videos of child pornography on his computer, as well as evidence that he had viewed other images that he had subsequently deleted. This evidence served as the basis for Petitioner's possession charge and conviction. Id. at 466.

16

(4:16CV0564)

The Court finds that the Seventh Claim is without merit. The different times, dates, and locations of the child pornography did not implicate the Double Jeopardy Clause of the Fifth Amendment. The Court agrees with the Government that Petitioner's trial counsel had no valid objection to make regarding the receiving and possession charges. Response (ECF No. 71) at PageID #: 1690.

## IV. Conclusion

Gray is unable to establish that his trial counsel was ineffective for failing to object and that he suffered prejudice as a result of the performance of counsel. Accordingly, Petitioner Nickie Thomas Gray, Jr.'s Motion and Supplemental Motion to Vacate and Set Aside Judgment (ECF Nos. 67 and 73) pursuant to 28 U.S.C. § 2255 are denied.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

| December 22, 2017 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |